UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER CHRISTINA ADAMS,<br><br>Plaintiff,<br><br>v.<br><br>BMW NORTH AMERICA, LLC,<br><br>Defendant. | Case No. 22-cv-01749-BAS-KSC<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 20);**<br><br>**AND**<br><br>**(2) DENYING PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER (ECF No. 22)** |

Plaintiff Jennifer Adams brings suit for damages under California's Song-Beverly Consumer Warranty Act ("SBA"), Cal. Civ. Code §§ 1790–1795. (Compl., ECF No. 1 at 5, 7–8.) Defendant BMW North America, LLC ("BMW") moves for summary judgment on all of Plaintiff's claims. (Def.'s Mot. Summ. J., ECF No. 20 at 2.) Plaintiff also seeks permission to modify the scheduling order in order to file her first amended complaint. (Pl.'s Reply, ECF No. 27 at 2.) The February 9, 2023 Scheduling Order set the deadline for filing motions to amend on February 24, 2023. (Scheduling Order, ECF No. 17 at 1.)

The Court held oral argument on April 29, 2024.  (ECF No. 33.)  For the following reasons, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion to amend the scheduling order.

## I.   BACKGROUND

The facts are not disputed in this case.  On October 19, 2021, Plaintiff purchased a used BMW, previously owned by another third party, from the Jaguar Land Rover of San Diego.  (Compl. at 4.)  At the time of the sale, the used vehicle had a balance remaining on BMW's original new vehicle warranty, which ran for four years or 50,000 miles, whichever comes first.  (Def.'s Mot. Summ. J. at 2.)  Here, the remaining express warranty on the used vehicle required BMW to maintain the vehicle's performance or provide compensation if there was a failure in its performance.  (Compl. at 4–5.)  The used 2019 BMW had 23,920 miles on the odometer.  (Def.'s Mot. Summ. J. at 2.)  The original car warranty would then still apply to the original car owner because the used 2019 BMW was less than four years old and had less than 50,000 miles on it.  Jaguar Land Rover of San Diego is not affiliated with BMW of North America and not an authorized BMW dealership.  (*Id.*)

Plaintiff alleges the used vehicle "was delivered to Plaintiff with serious defects and non-conformities to warranty."  (Compl. at 5.)  Some defects include issues in its electronics, transmission, and infotainment systems.  (*Id.* at 6.)  Plaintiff alleges when Plaintiff sought repairs from BMW, BMW failed to repair the used vehicle or issue a refund or replacement vehicle.  (*Id.*)  Plaintiff seeks to revoke her acceptance of the sales contract seeking either a replacement vehicle or reimbursement.  (*Id.* at 5, 8–9.)

On November 8, 2022, Plaintiff commenced this action against BMW under the SBA.  (*Id.* at 1.)  The SBA regulates warranty terms and mandates service and repair duties for those who offer warranties.  Cal. Civ. Code § 1793.2(d).  Other "remedies [under the SBA] include costs, attorney's fees, and civil penalties."  *Krieger v. Nick Alexander Imps., Inc.*, 234 Cal. App. 3d. 205, 213 (1991).  Plaintiff brings three actions under the SBA in connection with her purchase of the used car.  First, Plaintiff asserts BMW breached its

express warranty under the SBA because BMW failed to repair, replace, or refund the used vehicle when the vehicle experienced defects covered by BMW's new vehicle warranty. (Compl. at 6.)  Second, Plaintiff contends BMW breached its implied warranty under the SBA because the used vehicle's electronics, infotainment, and transmission defects caused it to become unfit for ordinary purposes.  (*Id.* at 8.)  Third, Plaintiff argues BMW violated Section 1793.2(b) of the SBA because BMW failed to repair the used vehicle within a reasonable time.  (*Id.* at 9.)

BMW moves for summary judgment on all Plaintiff's claims under the SBA, arguing, because Plaintiff purchased a used non-demonstrator vehicle, the SBA does not apply. (Def.'s Mot. Summ. J. at 2, 11.)  In response, Plaintiff submitted a motion to modify the scheduling order on the date that BMW's motion for summary judgment was filed. (Pl.'s Reply at 8.)  Plaintiff requests the Court modify the scheduling order in order to add two claims under the Magnuson-Moss Act and the California Commercial Code.  (Pl.'s Mot. First Am. Compl., ECF No. 22 at 6.)

## II.  MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is proper on "each claim or defense" "or the part of each claim or defense" when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When resolving a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The court does not make credibility determinations or weigh conflicting evidence.  *See Anderson*, 477 U.S. at 255.  The court's role at summary judgment "is to isolate and dispose of factually unsupported claims" so that they are "prevented from going to trial with the

attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy its burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *Celotex Corp.*, 477 U.S. at 324. The party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). A "scintilla of evidence" in support of the nonmoving party's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252; *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can "a party . . . manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982) (citations omitted).

## B. ANALYSIS

### i. Song-Beverly Consumer Warranty Act

The SBA is a remedial statute designed to protect consumers "who have purchased consumer goods covered by an express warranty." *Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal. App. 4th 785, 798 (2006) (citing *Jensen v. BMW of N. Am., Inc.*, 35 Cal. App. 4th 112, 121 (1995)). A consumer good is "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes except for clothing and consumables." Cal. Civ. Code § 1791(a).

The SBA regulates warranty terms and imposes service and repair obligations on parties who issue warranties. *Id.* § 1793.2(d). In addition to its service and repair obligations, "remedies [under the SBA] include costs, attorney's fees, and civil penalties." *Krieger*, 234 Cal. App 3d at 213. Under the SBA, parties who issue warranties include manufacturers, distributors, and sellers or retailers. *Rodriguez v. FCA US, LLC*, 77 Cal. App. 5th 209, 217 (2022).

A manufacturer must maintain service and repair facilities for new vehicles. Cal. Civ. Code § 1793.2(a)(1)(A). Under the Act's refund-and-replace express warranty provisions, if a manufacturer or its representative in California cannot "service or repair a new motor vehicle . . . to conform to the applicable express warranties after a reasonable number of attempts, the manufacturer shall either promptly replace the new motor vehicle . . . or promptly make restitution to the buyer . . . ." *Id.* § 1793.2(d)(2). A new motor vehicle "includes . . . a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty." *Id.* § 1793.22(e)(2).

Here, Plaintiff contends a used vehicle, previously owned by a third party, is a new motor vehicle under the SBA if the used vehicle's original car warranty remains. (Compl. at 5.) Defendant claims a used vehicle previously owned by a third party is not a new motor vehicle and therefore, ineligible for SBA relief, regardless of whether it had a remaining balance on its initial warranty. (Def.'s Mot. Summ. J. at 4.) Accordingly, the

Court examines whether the SBA qualifies a used vehicle with some of the manufacturer's new car warranty remaining on it as a "new motor vehicle" or if its definition of a "new motor vehicle" is cabined to demonstrator vehicles sold from the manufacturer or dealer.

### ii. California Precedent

In support of her claim, Plaintiff cites *Jensen v. BMW of North America, Incorporated*, 35 Cal. App. 4th 112 (1995). Defendant argues the more recent *Rodriguez v. FCA United States, Limited Liability Company*, 77 Cal. App. 5th 209 (2022) is on point. The Court considers both cases.

Before *Rodriguez*, *Jensen* and its progeny controlled. In *Jensen*, in response to a newspaper ad for BMW demonstrators (i.e., vehicles used by dealers to demonstrate qualities of the same or similar vehicles) the plaintiff leased what the salesperson believed to be a demonstrator BMW from a BMW-authorized dealership. *Jensen*, 35 Cal. App. 4th at 119. The salesperson offered the plaintiff an additional 36,000-mile warranty on top of the 7,500 miles already on the vehicle. *Id.* It was later discovered that the plaintiff's BMW was a previously owned vehicle and not a demonstrator one. *Id.* Soon after the purchase, the plaintiff's vehicle suffered from numerous defects. *Id.* at 120. The BMW dealership failed to fix the defects and rejected the plaintiff's request for a refund. *Id.*

In *Jensen*, BMW argued it could not be sued for breach of express warranty because Plaintiff's used vehicle was not a demonstrator. *Id.* at 122. The court disagreed with BMW and held used cars sold with a balance remaining on the new motor vehicle warranty fall within the scope of the SBA's express warranty provisions for new motor vehicles. *Id.* at 126. It reasoned the language "demonstrator or other motor vehicle sold with a manufacturer's new car warranty" indicates "demonstrator" and "other motor vehicle" are intended as separate categories of "new motor vehicle" if they are "sold with a manufacturer's new car warranty" or balance remaining on the original new car warranty. *Id.* at 123 (citing *White v. Cnty. of Sacramento*, 31 Cal. 3d 676, 680 (1982)). The court also articulated its holding is consistent with the legislature's intent of protecting buyers who purchase vehicles with a remaining written warranty. *Jensen*, 35 Cal. App. 4th at 126.

In *Rodriguez*, the California Court of Appeal clarified whether the phrase "other motor vehicle sold with a manufacturer's new car warranty" covers used vehicles sold with a balance remaining on the manufacturer's new car warranty. *Rodriguez*, 77 Cal. App. 5th at 214. In *Rodriguez*, the plaintiffs purchased a two-year-old Dodge truck with over 55,000 miles from a used car dealership that was unaffiliated with the manufacturer. *Id.* at 215. Although the manufacturer's basic warranty expired, its limited powertrain warranty did not. *Id.* After experiencing electrical defects, the plaintiffs sued the truck's manufacturer. *Id.* The court concluded "the phrase [other motor vehicle sold with a manufacturer's new car warranty] functions instead as a catchall for sales of essentially new vehicles where the applicable warranty was issued with the sale." *Id.*

The *Rodriguez* court reasoned the statute's legislative materials make no mention of used vehicles. *Id.* at 223. The court explained the legislature intended for the SBA to provide relief to a narrow class of consumers who purchased new vehicles and demonstrator ones. *Id.* at 222–23. It noted the legislature intended to protect buyers previously precluded from suing manufacturers when manufacturers sold used or demonstrator vehicles with a new vehicle warranty attached to the sale. *Id.* at 223.

Notably, the *Rodriguez* court found *Jensen* was "easily distinguishable." *Id.* The court highlighted *Jensen* involved a manufacturer-affiliated dealer who issued a full new car warranty on top of a lease, where the vehicle was advertised as a demonstrator with 7,565 miles on it. *Id.* Further, it concluded the court in *Jensen* was not asked to decide whether a used car with an unexpired warranty sold by a third-party seller qualifies as a new motor vehicle. *Id.* at 224.

The statute's language supports the conclusion in *Rodriguez*. As emphasized in *Rodriguez*, the SBA makes no mention of used cars. *Rodriguez*, 77 Cal. App. 5th at 220–221. If the legislature intended to include used cars in its definition of "new motor vehicle," it would have done so explicitly as it did for demonstrator vehicles. *Id.* Moreover, under the SBA, "'[n]ew motor vehicle' includes . . . a dealer-owned vehicle and a 'demonstrator' or other motor vehicle sold with a manufacturer's new car warranty . . . ." Cal. Civ. Code

§ 1793.22(e)(2). Plainly reading the statute, the Court finds that the "or" operates as a catchall provision to address situations where the manufacturer-dealer may not be selling a demonstrator but is selling a vehicle with mileage accompanied with a new car warranty.

Additionally, as explained by the California Court of Appeal in *Rodriguez*, the SBA's 1987 amendment report articulated that the California Legislature found it necessary to add dealer-owned and "demonstrator" vehicles sold with a manufacturer's new car warranty to the definition of "new motor vehicles." *Rodriguez*, 77 Cal. App. 5th at 222–23 (quoting California Department of Consumer Affairs, Enrolled Bill Report on Assembly Bill No. 2057 (1987–1988 Reg. Sess.)). The California Legislature reasoned "[s]ome buyers [were] being denied the remedies under the lemon law because their vehicle is a 'demonstrator' or 'dealer-owned' car, even though it was sold with a new car warranty." *Id.* at 223. The Court finds the reasoning of the California Court of Appeal in *Rodriguez* persuasive.

Other district courts have consistently held that used non-demonstrator vehicles with amounts remaining on their warranty are not new motor vehicles under the SBA. *See, e.g.*, *Lemke-Vega v. Mercedes-Benz USA, LLC*, No. 23-CV-01408-DMR, 2023 WL 3604318, at *4–6 (N.D. Cal. May 22, 2023) (rejecting the plaintiff's breach of express and implied warranty claims because the plaintiff bought the preowned vehicle from a third party dealer); *Barboza v. Mercedes-Benz USA, LLC*, No. 1:22-CV-0845 AWI CDB, 2022 WL 17978408, at *3 (E.D. Cal. Dec. 28, 2022) ("[T]he [c]ourt agrees with these [federal district courts] and the reasoning of *Rodriguez*.").

Adopting a broader definition of a "new motor vehicle" to apply to used vehicles would not support the goals of the statute when those defects may have occurred due to the unknowable and the unforeseeable negligence of the prior owner. *See id.* at 218 ("[A] hallmark of the Act is that its consumer protections apply against the party who sold the product to the buyer and issued the express warranty."). *See also Kiluk v. Mercedes-Benz USA, LLC*, 43 Cal. App. 5th 334, 340 n.4 (2019) (expressing "reservations" on the court's

holding in *Jensen* because its holding implied that "a car accompanied by a 20-year warranty" would qualify as a "new motor vehicle" if it were purchased used "on year 18").

Accordingly, a used vehicle sold with a remaining balance on the original manufacturer's warranty does not qualify as new vehicle under the SBA.

### iii. Plaintiff's Claims

Applying this standard to the facts at hand, it is undisputed Plaintiff purchased a used vehicle from a used car dealership with a remaining balance on the manufacturer's warranty. It is also undisputed that the used car dealership was not affiliated with Defendant and that Defendant did not issue Plaintiff a new vehicle warranty at the time of purchase. Based on the Court's reasoning above, Plaintiff's vehicle does not qualify as a "new motor vehicle" under the SBA.

Because all of Plaintiff's claims under the SBA rely on her vehicle being a "new motor vehicle," Plaintiff's claims are all legally foreclosed. The SBA does not apply to used vehicles purchased with a remaining manufacturer's warranty from an unaffiliated third-party dealership. Accordingly, the Court summarily adjudicates Plaintiff's breach of express warranty, breach of implied warranty, and violation of Song-Beverly Act Section 1793.2(b) claims in favor of Defendant. The Court makes this adjudication with prejudice; however, as was discussed at oral argument, the California Supreme Court may overrule *Rodriguez*. If that comes to pass, Plaintiff can appeal this order to the Ninth Circuit.

## III. MOTION TO AMEND

Plaintiff requests permission to modify the scheduling order to file a first amended complaint. (Pl.'s Mot. First Am. Compl. at 2.) The Court issued a Scheduling Order, setting the deadline for filing motions to amend on February 24, 2023. (Scheduling Order at 1.) On November 1, 2023, Plaintiff sought to add two claims arising under the same set of facts, alleging violations of the Magnuson-Moss Warranty Act and the California Commercial Code. (Pl.'s Mot. First Am. Compl. at 7–8.)

### A. LEGAL STANDARD

Rule 16 applies when motions for leave to amend are filed after the scheduling order. Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). This standard is "more stringent" than Rule 15(a), which freely allows leave to amend. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951–52 (9th Cir. 2006). Rule 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir. 1992). Thus, if the movant was not diligent, the inquiry should end, and the motion to amend should be denied. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002).

Diligence is a "case-specific" inquiry that focuses primarily on the length of time between the basis for amendment and the movant's request to amend. *See San Diego Ass'n of Realtors, Inc. v. Sandicor, Inc.*, No. 16cv96-MMA (KSC), 2017 WL 6344816, at *5 (S.D. Cal. Dec. 12, 2017). "A party fails to show good cause when the proposed amendment rests on information that the party knew, or should have known, in advance of the deadline." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 194 (S.D.N.Y. 2014) (internal quotations and citations omitted). Courts need not find good cause on the whole but rather may appropriately consider whether the movant has shown good cause for each proposed amendment or group of related amendments. *See San Diego Ass'n of Realtors, Inc.*, 2017 WL 6344816, at *5–8.

"A party may show good cause when the amendment is based on new and pertinent information that came to light after the deadline to amend." *See Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 216 (N.D. Cal 2015)). A movant may also show good cause if amendment is sought based on a recent change in law. *Id.* "Prejudice to the non-moving party, while not required under Rule 16(b)'s good cause assessment, can serve as an additional reason to deny a motion[.]" *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000).

Only after a showing of good cause under Rule 16(b)(4) has been made will a court apply Rule 15(a). *Id.* at 608 (citing *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C.

1987)). The court considers five factors, including (1) whether the motion is sought in bad faith, (2) whether the movant has unduly delayed the request, (3) whether the nonmovant would be prejudiced, (4) whether the moving party has previously amended the pleadings, and (5) the apparent futility of any proposed amendment. *Manzarek v. St. Paul Fire & Ins. Co.*, 519 F.3d 1025, 1034 (9th Cir. 2008). "The party opposing amendments bears the burden of showing prejudice,' futility, or one of the other permissible reasons for denying a motion to amend." *Farina v. Compuware Corp.*, 256 F.Supp.2d 1033, 1060 (D. Ariz. 2003). "Prejudice to the opposing party is the most important factor." *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 330–31 (1971)).

### B. Analysis

Plaintiff advances three good cause arguments demonstrating that the Court should grant her motion to amend. First, Plaintiff argues she relied on Defendant's answer referring to Plaintiff's vehicle as a "new" vehicle. (Pl.'s Mot. First Am. Compl. at 10, 16.) Second, Plaintiff contends Defendant failed to provide notice of raising the *Rodriguez* defense in Defendant's affirmative defenses and interrogatories. (*Id.* at 7, 11, 16.) Third, Plaintiff asserts she was diligent because she filed her motion in the same calendar month of receiving Defendant's Motion for Summary Judgment and provided the Court with a pre-drafted first amended complaint ready for filing. (*Id.* at 12.) In short, Plaintiff argues she filed her motion after the deadline to amend because Defendant was not diligent in revealing its defenses to her.

First, the Court finds that Plaintiff was not diligent in seeking her proposed amendments. The record shows Plaintiff's vehicle was used. (Compl. at 4.) Although Defendant made drafting errors in referring to Plaintiff's vehicle as a "new" vehicle in its answer, Defendant denied that Plaintiff's vehicle was a "new motor vehicle" in subsequent briefing. Specifically, Defendant communicated to Plaintiff its intention to raise a *Rodriguez* defense in the Joint Rule 26(f) Discovery Plan filed on January 23, 2023. (ECF No. 14.) *See, e.g., Johnson*, 975 F.2d at 609 (denying a plaintiff's motion to amend after

the "binding cut-off date for the motion had passed."). Further, Plaintiff should have known if her vehicle was new or used.

Second, there was no change in law. *Rodriguez* was decided seven months before this lawsuit was filed. Despite receiving Defendant's Request for Admission response and knowing the law remained unchanged, Plaintiff failed to promptly amend her complaint. Additionally, Plaintiff did not introduce any new facts in her request to modify the scheduling order. (Pl.'s Mot. First Am. Compl. at 8.) Plaintiff's failure to pursue her claims diligently does not entitle her to relief.

Even if Plaintiff had been diligent in requesting relief, Defendant argues it will suffer prejudice from Plaintiff's amendment. (Def.'s Opp.'n Pl.'s Mot. Am. at 9.) Fact discovery closed May 26, 2023. (Scheduling Order at 1.) Expert witness disclosures ended August 4, 2023. (Scheduling Order at 2.) Although the original trial dates set in February and March of this year were vacated pending ruling on this summary judgment motion, the case is ready for an immediate trial date. Re-opening discovery at this late date would force Defendant to scramble to collect facts sufficient to establish a new set of defenses and delay the trial date likely into 2025. *See, e.g.*, *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming the district court's denial of motion to amend pleadings filed on the eve of the discovery deadline because to permit such amendment would cause undue delay and prejudice).

The Court finds Plaintiff has not been diligent. Further, Defendant would be prejudiced by reopening discovery, which closed last May. Plaintiff should have brought her additional claims before the deadline, especially considering her new claims arose from the same set of facts. Accordingly, the Court denies Plaintiff's motion to amend the scheduling order.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's motion for summary judgment on all of Plaintiff's claims. (ECF No. 20.) The Court **DENIES** Plaintiff's motion for leave to amend. (ECF No. 22.) The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant and to close this matter.

**IT IS SO ORDERED.**

**DATED: April 30, 2024**

Hon. Cynthia Bashant
United States District Judge